J-S32015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :---: |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DENNIS L. PRENDES | : | |
| | : | |
| Appellant | : | No. 2313 EDA 2016 |

Appeal from the PCRA Order June 15, 2016
In the Court of Common Pleas of Northampton County
Criminal Division at No(s):  CP-48-CR-0001246-2012

BEFORE:   GANTMAN, P.J., STABILE, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JUNE 29, 2017**

Appellant, Dennis L. Prendes, appeals from the order entered in the Northampton County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In its opinion, the PCRA court fully and correctly sets forth the relevant facts and procedural history of this case.[2]  Therefore, we have no reason to restate them.

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] Throughout the opinion, the PCRA court cites Megan's Law as the statute governing Appellant's sexual offender registration requirements.  Megan's Law, however, expired on December 20, 2012.  **See** 42 Pa.C.S.A. §§ 9791-9799.9.  The Sexual Offender Registration and Notification Act (SORNA) became effective in its place.  **See** 42 Pa.C.S.A §§ 9799.10—9799.41.
*(Footnote Continued Next Page)*

_____

*Former Justice specially assigned to the Superior Court.

Appellant raises the following issues for our review:

WHERE TRIAL COUNSEL'S ERRORS LED TO A JURY THAT WAS PRONE TO CONVICT WHICH, IN TURN, LED TO THE PLEA OF GUILTY, AFTER COUNSEL SAW A DEADLOCKED JURY'S TALLY SHOWING IT FAVORED CONVICTION, PANICKED AND ESSENTIALLY FORCED APPELLANT TO TAKE THE PLEA, DID THE [PCRA] COURT ERR IN NOT PERMITTING THESE CLAIMS TO BE PRESENTED AT A PCRA HEARING?

WHERE COUNSEL WAS INEFFECTIVE IN ADVISING [APPELLANT] TO PLEAD GUILTY, DID THE [PCRA] COURT ERR IN NOT GRANTING A NEW TRIAL?

WHERE COUNSEL COERCED [APPELLANT] TO PLEAD GUILTY, DID THE [TRIAL] COURT ERR IN NOT GRANTING A NEW TRIAL?

WHERE AFTER[-]DISCOVERED EVIDENCE MET ALL THE TESTS FOR THE GRANT OF A NEW TRIAL, DID THE [PCRA] COURT ERR IN NOT GRANTING RELIEF IN THE PCRA PROCEEDING OR HOLD A HEARING ON THIS ISSUE?

(Appellant's Brief at 2).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Michael J. Koury, Jr., we conclude Appellant's issues on appeal merit no relief. The PCRA court opinion comprehensively discusses and disposes of the questions presented. (**See** PCRA Court Opinion, filed September 8, 2016, at 17-33) (finding: **(1)** Appellant's PCRA petition sought to raise various claims of counsel's ineffectiveness during trial; however, these claims do not address

_(Footnote Continued)_ ―――――――――

SORNA governed Appellant's January 11, 2013 SVP hearing and dictates Appellant's registration requirements.  **See** 42 Pa.C.S.A. § 9799.13.

- 2 -

validity of Appellant's guilty plea or legality of Appellant's sentence; as such, these claims are waived, and PCRA court properly prohibited Appellant from exploring, at PCRA hearing, counsel's alleged ineffectiveness during trial; **(2)** with respect to trial counsel's handling of jury's straw vote, trial counsel shared straw vote with Appellant and informed Appellant that straw vote made trial counsel less confident in likelihood of acquittal; trial counsel also discussed outcome of various scenarios with Appellant on numerous occasions, including during jury deliberations; trial counsel's actions were based on twenty years of experience as criminal defense attorney; under these circumstances, Appellant failed to establish counsel's advice about straw vote lacked reasonable basis or prejudiced Appellant; with respect to trial counsel's handling of SORNA implications, counsel prepared memorandum for Appellant prior to trial, which described SORNA implications of guilty plea including possibility of lifetime registration as sex offender; Appellant acknowledged possibility of lifetime registration as sex offender in both his written and oral plea colloquies; further, counsel supplemented Appellant's oral plea colloquy to address December 2012 amendments to statute, which extended required registration periods; significantly, even if counsel had failed to inform Appellant of SORNA implications, it would not have undermined validity of plea because sex offender registration requirements are collateral consequence; thus, Appellant's claims that counsel was ineffective when he advised Appellant

about guilty plea fail; **(3)** while Appellant alleges counsel's references to possible thirty-year sentence scared him, Pennsylvania law required trial counsel to inform Appellant of permissible sentencing ranges; as such, trial counsel's references to potential thirty-year sentence did not unlawfully induce Appellant's guilty plea; additionally, trial counsel's recommendation that Appellant enter plea prior to jury's verdict was reasonable and did not coerce Appellant's guilty plea; to succeed on claim, Appellant had to establish jury's verdict offered potential for success substantially greater than entry of guilty plea; nevertheless, Appellant merely speculates jury would not have reached verdict or would have acquitted Appellant of most serious charges; under these circumstances, counsel's advice to enter plea prior to jury's verdict did not unlawfully induce Appellant's guilty plea; finally, Appellant's allegations of coercion directly contradict his plea colloquies and his testimony at PCRA hearing; record indicates Appellant freely and voluntarily entered his guilty plea; thus, Appellant's claims that trial counsel coerced his guilty plea fail; **(4)** alleged after-discovered evidence does not exculpate Appellant as it merely impeaches credibility of Commonwealth's polygraph analyst; further, Appellant waived challenge to credibility of Commonwealth's polygraph analyst through entry of negotiated guilty plea; because impeachment evidence does not establish basis for relief and Appellant waived this claim through entry of guilty plea, court properly denied relief and limited exploration of claim at PCRA hearing).  The

record supports the court's analysis and belies Appellant's allegations of coercion and counsel's ineffectiveness, where the plea colloquy makes clear Appellant entered his guilty plea of his own volition, calmly, fully informed, and expressly satisfied with the services of his counsel. (*See* N.T. Guilty Plea, 9/18/12, at 22-40; R.R. at 33-51.) Appellant is bound by his statements made under oath in the course of his plea and cannot, during post-sentencing or collateral proceedings, attack the plea on grounds which contradict the statements he made in his plea colloquy. *See Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa.Super. 2003) (stating Pennsylvania law presumes defendant who entered guilty plea was aware of what he was doing and bears burden of proving otherwise). Accordingly, we affirm on the basis of the PCRA court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/29/2017

- 5 -

# IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
## COMMONWEALTH OF PENNSYLVANIA
## CRIMINAL DIVISION

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | **No.: C-48-CR-1246-2012** |
| **vs.** | |
| **DENNIS L. PRENDES,** | |
| **Defendant.** | |

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a) STATEMENT

**AND NOW**, this 8th day of September, 2016, the court issues the following statement:

Following the denial of a Post-Conviction Relief Act Petition and a motion for reconsideration, on July 14, 2016, Defendant Dennis L. Prendes ("Prendes") filed and served upon this court a timely Notice of Appeal to the Superior Court of Pennsylvania. On August 8, 2016, pursuant to our request under Pa.R.A.P. 1925(b), we received Prendes's Concise Statement of Matters Complained of on Appeal. For the reasons that follow, we respectfully suggest that Prendes's appeal lacks merit and should be dismissed.

# BACKGROUND

## I. Charges

On March 13, 2012, Prendes was arrested and charged with (1) rape of a person less than thirteen years old,[1] (2) rape of a child,[2] (3) aggravated indecent assault of a person less than thirteen years old,[3] (4) aggravated indecent assault of a child,[4] (5) involuntary deviate sexual intercourse with a child,[5] (6) indecent assault of a person less than thirteen years old,[6] (7) endangering the welfare of children,[7] and (8) corruption of minors.[8] *See* Information, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. May 21, 2012). On June 7, 2012, Prendes was formally arraigned on these charges. *See* Acknowledgement of Arraignment, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jun. 11, 2012). Following arraignment, Prendes's trial was scheduled for September 10, 2012. *See* Order of Court dated Jun. 8, 2012, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jun. 8, 2012).

---

[1] 18 Pa. C.S.A. § 3121(a)(6).
[2] 18 Pa. C.S.A. § 3121(c).
[3] 18 Pa. C.S.A. § 3125(a)(7).
[4] 18 Pa. C.S.A. § 3125(b).
[5] 18 Pa. C.S.A. § 3123(b).
[6] 18 Pa. C.S.A. § 3126(a)(7).
[7] 18 Pa. C.S.A. § 4304(a).
[8] 18 Pa. C.S.A. § 6301(a).

## II. Jury Trial

Following *voir dire* on September 10, 2012, a jury of twelve citizens and two alternates was selected, seated and sworn. *See* Transcript of Proceedings of Sept. 10, 2012 at 28, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jan. 17, 2013) ("N.T. Sept. 10"). From September 11, 2012 through September 17, 2012, the impaneled jury heard opening statements, testimony from fifteen witnesses, including the alleged victim and Prendes, closing arguments, and the charge of the court. *See generally* Transcript of Proceedings of Sept. 11, 2012, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jan. 17, 2013); Transcript of Proceedings of Sept. 12, 2012, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jan. 17, 2013); Transcript of Proceedings of Sept. 13, 2012, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jan. 17, 2013); Transcript of Proceedings of Sept. 14, 2012, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jan. 17, 2013); Transcript of Proceedings of Sept. 17, 2012, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jan. 17, 2013) ("N.T. Sept. 17"). On September 17, 2012, the jury deliberated for six hours. *See* N.T. Sept. 17 at 121. During deliberations, the jury presented the court with two questions, which the court answered in the presence of Prendes, his attorney, and the attorney for the Commonwealth. *See id.* at 96-112, 118-20; Court Ex. 1, 2 . At

3

approximately 7:30 p.m., the jury foreperson informed the court officer that the jury did not believe it could reach a unanimous verdict on some of the charges. *See* N.T. Sept. 17 at 121, 124-25. The court revealed this communication to the parties. *See id.* at 121. The court then read to the jury Pennsylvania Standard Jury Instruction 2.09, "Deliberations and Verdict: Deadlocked Jury." *See id.* at 125.

> Ladies and gentlemen of the jury, I remind you that in order to return a verdict on any charge you must agree unanimously on that specific charge. Each of you has a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to your individual judgment.
>
> However, each of you must decide this case for yourself after an impartial consideration of the evidence with your fellow jurors. While you should not hesitate to reexamine your own views and change your opinion if you are convinced that your opinion is erroneous do not feel compelled to surrender your honest belief as to the weight or effect of the evidence solely because of the opinion of your fellow jurors for the mere purpose of returning a verdict.

*Id.* The court asked the jury to return at 9:00 a.m. on September 18, 2012 to resume deliberations. *See id.* at 125-26.

After the parties left the courtroom on September 17, 2012 but before the jury left the deliberation room to depart from the courthouse, the jury foreperson provided a note to the court officer. *See* Transcript of Proceedings of Sept. 18, 2012 at 3, 7-8, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jan. 28, 2013) ("N.T. Sept. 18"); Court Ex. 3. Upon determining that the note did not contain a question from

4

the jury, the court officer returned the note to the jury foreperson. *See* N.T. Sept. 18 at 3. The court officer then informed the court of the contents of the note. *See id.* Because the court was informed of the contents of the note, the court instructed the court officer to retrieve the note from the jury foreperson at 9:00 a.m. on September 18, 2012. *See id.*

At 9:00 a.m. on September 18, 2012, the court met with counsel in chambers and allowed them to review the note, which set forth the jury's numerical split regarding all of the charges, as follows:

| Charge | Guilty | Not Guilty |
|---|---|---|
| Rape | 8 | 4 |
| Rape of a Child | 0 | 12 |
| Involuntary Deviate Sexual Intercourse | 8 | 4 |
| Involuntary Deviate Sexual Intercourse With a Child | No Tally | No Tally |
| Aggravated Indecent Assault | 10 | 2 |
| Aggravated Indecent Assault of a Child | 0 | 12 |
| Indecent Assault | 10 | 2 |
| Endangering the Welfare of Children | 10 | 2 |
| Corruption of Minors | 10 | 2 |

*See id.* at 3-5, Court Ex. 3. The foreperson's note concluded with the statement "P.S. No Movement." *See* N.T. Sept. 18 at 3, Court Ex. 3.

The court then read to the jury Pennsylvania Standard Jury Instruction 2.09, "Deliberations and Verdict: Deadlocked Jury,"[9] and asked the jury to resume its deliberations. *See* N.T. Sept. 18 at 10-11. At approximately 10:00 a.m., the jury foreperson informed the court officer that the jury had reached a verdict on some of the charges but could not reach a verdict as to other charges. *See id.* at 11. The court informed counsel that the jurors would be brought into the courtroom and that the court was prepared to take a partial verdict. *See id.* at 11-13.

Upon being informed of this development, Prendes and his attorney requested a recess. *See id.* at 13. Following the recess, Prendes's attorney and the attorney for the Commonwealth informed the court that they had agreed upon both a plea and a sentence. *See id.* at 16-18. The agreement provided that Prendes would plead guilty and allocute to the charges of (1) indecent assault of a person under thirteen years old; (2) endangering the welfare of children; and (3) corruption of minors. *See id.* at 19-20. The agreement further provided that Prendes would be sentenced to serve a term of imprisonment in a state correctional institution for a minimum period of 30 months to a maximum period of 60 months, followed by a period of 36 months of probation. *See id.* at 21-22. The court accepted both the plea agreement and the agreed-upon sentence. *See id.* at 22. As a result of the

---

[9] *See supra* p. 5.

6

plea agreement, the jury was discharged without rendering a verdict as to any of the charges.

### III. The Guilty Plea Colloquy

Prendes completed a written guilty plea statement and a written addendum to the sentencing colloquy for registration of sexual offenders. *See* Guilty Plea Statement (Colloquy), *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Sept. 18, 2012); Written Addendum to the Sentencing Colloquy for Registration of Sexual Offenders, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Sept. 18, 2012). The court also engaged in a detailed verbal guilty plea colloquy with Prendes. *See* N.T. Sept. 18 at 23-39. As to the factual basis for the guilty plea, the following was placed on the record:

> MS. BROSCIUS: Your Honor, the defendant is the uncle of the victim in this matter, the victim being [S.P.], she's now 21. The defendant, as her uncle, as [S.P.] was in the care of the defendant on various occasions throughout her life, primarily between the ages of 5, all the way up until she was 13, the defendant did have indecent contact, indecent sexual contact with the victim on numerous occasions throughout that period of time. The defendant also, in that indecent contact, did have contact with the victim's vaginal area with his hand.
>
> THE COURT: Is that what happened, Prendes?
>
> PRENDES: That's what I'm being charged with and that's what I'm agreeing to, yes, Your Honor.
>
> THE COURT: You have to do better than that. Is that what happened, Prendes? Did you do that? Did you touch [S.P.'s] vagina for the purpose of arousing sexual desire to yourself?

7

PRENDES: Yes

THE COURT: Are you sure?

PRENDES: Yes.

*Id.* at 37-38. Prendes's written guilty plea statement included the following questions:

> Do you understand that even after your guilty plea is accepted by the Court, you will have the right to file a motion to withdraw your guilty plea at any time prior to the sentencing?
>
> . . . .
>
> If the Court does not allow you to withdraw your guilty plea, you may appeal that decision to the Superior Court within thirty (30) days. Do you understand this?

Guilty Plea Statement (Colloquy) ¶¶ 32, 35. Prendes wrote "Yes" in answer to both of these questions. *See id.* Both Prendes and his counsel signed and dated the guilty plea statement, and Prendes initialed each page. *See id.* Prendes acknowledged on the record that he had signed the guilty plea statement, that he understood all of the questions, that he had answered all of the questions himself, and that he had initialed each page. *See* N.T. Sept. 18 at 24-26. Prendes's counsel acknowledged on the record that he had consulted with Prendes about completing the guilty plea colloquy and that he believed Prendes understood the rights he was waiving by pleading guilty. *See id.* at 26-27. When the court then asked Prendes whether he was satisfied with the services of his attorney, he answered, "Very much so, Your Honor." *Id.* at 27.

8.

The court accepted Prendes's guilty plea and ordered that the Pennsylvania Sexual Offenders Assessment Board ("SOAB") assess Prendes to determine whether he met the criteria to be classified as a sexually violent predator within the meaning of section 9792 of Megan's Law, 42 Pa.C.S.A. § 9792. *See id.* at 38, 41. The court deferred sentencing in order to permit completion of the SOAB assessment. *See id.* at 41.

IV.    Post-Trial Procedural History

   A.    *Guilty Plea Withdrawal and Sentencing*

On December 13, 2012, Prendes filed a motion to withdraw his guilty plea on the ground that he was factually innocent of all charges set forth in the Information filed against him. *See* Motion To Withdraw Guilty Plea Pursuant to Pa.R.Crim.P. No. 591 Prior to Sentencing Based Upon an Assertion of Innocence ¶ 14, *Commonwealth v. Prendes*, C-48-CR-2012-1246 (C.P. Northampton Co. Dec. 13, 2012). On December 21, 2012, following argument, the court denied Prendes's motion to withdraw his guilty plea. *See* Transcript of Proceedings of Dec. 21, 2012 at 31, *Commonwealth v. Prendes*, C-48-CR-2012-1246 (C.P. Northampton Co. Dec. 21, 2012). Prendes was sentenced on January 11, 2013 after the court heard testimony from Dr. Veronique Valliere, a licensed psychologist, and the court found that Prendes was a sexually violent predator. *See generally* Transcript of Proceedings of Jan. 11, 2013, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jan. 31, 2013). Pursuant to the terms of

9

his negotiated guilty plea, the court sentenced Prendes to a term of imprisonment in a state correctional institution for a minimum period of 30 months to a maximum period of 60 months, followed by a period of 36 months of probation. *See id.* at 8-14.

## B. *Appeal*

On January 22, 2013, in addition to other alleged errors, Prendes appealed the court's denial of his motion to withdraw his guilty plea. *See* Notice of Appeal, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jan. 22, 2013). On July 22, 2014, the Pennsylvania Superior Court affirmed the denial of Prendes's motion to withdraw his guilty plea, finding in part, that Prendes "failed to show that his guilty plea was not knowing, willing, and voluntary." *Commonwealth v. Prendes*, 97 A.3d 337, 354 (Pa. Super. 2014). Prendes's attempts to challenge the Pennsylvania Superior Court's decision with the Pennsylvania Supreme Court were unsuccessful. *See* Order Denying Petition for Allowance of Appeal, *Commonwealth v. Prendes*, No. 600 MAL 2014 (Pa. Dec. 16, 2014).

## C. *Post-Conviction Relief Act Petition*

On December 14, 2015, Prendes filed a petition pursuant to the Post-Conviction Relief Act ("PCRA"). *See* Petition for Post-Conviction Relief Based Upon Newly Discovered Evidence, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Dec. 14, 2015) ("Prendes's Petition"). Through his petition, Prendes argued that trial counsel was ineffective

because he failed 1) to present the testimony of Dr. Robert M. Gordon at trial; 2) to call character witnesses at trial; 3) to present all of the necessary evidence in a 404(b) motion prior to trial; 4) to present rebuttal testimony from Patricia Hart at trial; 5) to present the testimony of Susan Fabrizio at trial; 6) to object to Gregory Prendes's testimony about an incident of abuse concerning Prendes; 7) to request information from Prendes regarding witnesses who could have negated Amy Prendes's claim that she saw Prendes in the bedroom with the victim; and 8) to obtain the rough notes of Charles Patton before having Prendes testify. *See* Prendes's Petition ¶¶ 32(A)-(G), (I); Amended PCRA Petition ¶ 3(a), *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. May 9, 2016) ("Prendes's Amended Petition"). Further, Prendes claimed he should be granted relief because of newly discovered evidence that a witness, Charles Patton, lied for the prosecution in other cases, and that the guilty plea was coerced by trial counsel. *See* Prendes's Petition ¶ 32(H).

Prendes filed a brief in support of his petition alleging that "but for" the ineffective assistance of counsel "there . . . may have never been the necessity for a plea as the jury would have either found Dennis Prendes not guilty or reached pending verdicts that favored a not guilty finding." *See* Memorandum of Law in Support of PCRA Petition at 1, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. May 9, 2016). The Commonwealth filed a brief in opposition to Prendes's claims, and argued

11

that Prendes's evidentiary hearing should be limited to whether his guilty plea was unlawfully coerced by trial counsel, because Prendes waived his right to appeal the other issues by entering into a negotiated guilty plea. *See* Commonwealth's Response to Defendant's Request for an Evidentiary Hearing at 5, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. May 10, 2016). We agreed with the Commonwealth's position that Prendes's evidentiary hearing should be limited to his claims under 42 Pa.C.S.A. § 9543(a)(2)(iii), relating to allegations that his guilty plea was unlawfully induced.

### D. *PCRA Hearing*

The court held an evidentiary hearing on June 13, 2016. *See* Transcript of Proceedings of Jun. 13, 2016, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Sept. 6, 2016) ("N.T. Jun. 13"). During the hearing, the court heard testimony from Prendes, Brian Collins, Prendes's trial counsel, and Patricia Hart, an acquaintance of Prendes. *See generally id.*

Trial counsel testified that, after the court disclosed the jury tally, he became less confident in Prendes's likelihood of acquittal. *See id.* at 30-31. Based on his decades of experience in criminal defense, trial counsel recommended that Prendes accept a plea offered by the Commonwealth. *See id.* at 30-31, 37-38. Prior to making his recommendation, trial counsel went through "every possible scenario" with Prendes, including an acquittal,

12

a hung jury, and a conviction on the most serious counts. *See id.* at 31, 33-34. Trial counsel also testified that he explained the Megan's Law consequences of a guilty plea to Prendes on numerous occasions, even prior to trial. *See id.* at 38-40. Both trial counsel and Prendes authenticated a memorandum sent by trial counsel to Prendes that detailed the potential Megan's Law registration requirements. *See id.* at 38-40, 60-61, 80-81.

Prendes testified that he felt pressured to accept the guilty plea after trial counsel presented his evaluation of the case based on the jury tally. *See id.* at 58, 68. Prendes stated that trial counsel had briefly shared the actual jury tally with him on the morning of September 18, 2012, though he now contends that this representation was misleading. *See id.* at 64. Prendes attributed the pressure he felt to plead guilty to a fear that he might spend the rest of his life in prison. *See id.* at 68. Ultimately, however, Prendes conceded that the decision to plead guilty was his own choice. *See id.* at 74.

Prendes's acquaintance, Ms. Hart, testified that trial counsel reviewed the sentences Prendes might receive if he was convicted of the more serious charges. *See id.* at 104. She recalled trial counsel equating the maximum possible sentence of thirty years to a death sentence because, at the time, Prendes was sixty-two years old. *See id.* Prendes concurred in this assessment. *See id.* at 68.

13

We denied Prendes's PCRA petition on June 15, 2016. *See* Order of Court dated Jun. 15, 2016, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jun. 15, 2016) ("0PCRA Denial"). On June 23, 2015, Prendes filed a motion for reconsideration. *See* Motion for Reconsideration, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jun. 17, 2015). We denied Prendes's motion for reconsideration on June 27, 2016. *See* Order of Court dated Jun. 27, 2016, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jun. 27, 2016).

### E. *Appeal of PCRA Denial*

On July 14, 2016, Prendes appealed the denial of his PCRA petition to the Pennsylvania Superior Court. *See* Notice of Appeal, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jul. 14, 2016). On appeal, Prendes asserts that:

> 1. The Court erred in not permitting Petitioner to litigate all of the issues of trial Counsel's ineffectiveness set forth in paragraphs 32 (A-G, I) of the PCRA Petition and paragraph 3(a) of the Amended PCRA Petition, which are hereby incorporated by reference. The Court only permitted Petitioner to raise grounds relating to Petitioner's guilty plea. It is asserted that these claims of ineffectiveness helped create the atmosphere under which Petitioner pled guilty. Had Counsel not committed the ineffectiveness, then there would not have been such a negative atmosphere created and the jury's tally on many of the charges would have resulted in not guilty verdicts or, at the very least, favored finding him not guilty. Thus, there would have been no panic-stricken pressuring of Mr. Prendes to plead guilty or reason to plead guilty. Moreover, *but for that ineffectiveness at trial*, we would not be addressing the guilty plea at all.

14

2. Counsel also impermissibly coerced Petitioner into pleading guilty. Section 9543(a)(2)(iii) of the PCRA permits collateral relief for "[a] plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent." Mr. Prendes asserted his innocence throughout trial and even testified to his innocence.

When Counsel learned of the jury's tally after the first day of deliberations, he proceeded on a course of conduct designed to force and compel Petitioner to plead guilty despite the fact that he knew that Mr. Prendes did not want to plead guilty. In addition, Patricia Hart was strenuously advising Petitioner against pleading guilty as it appeared that the jury had not reached a verdict of guilty on any count.

Thus, over several hours Counsel exerted continued pressure on Mr. Prendes (while he was extremely vulnerable), to enter into the guilty plea, which was similar to the one Petitioner had previously rejected. Counsel also continually threatened that *Petitioner could receive a thirty-year sentence and be incarcerated for essentially the rest of his life if he did not plead guilty.*

Counsel's actions were unreasonable and based upon a fear, without rational basis, that the jury had reached a verdict on some counts, which would permit the Court to impose such a severe sentence when the objective facts reflected that the jury had not reached a verdict on any other counts.

3. Alternatively, Counsel was ineffective under §9543(a)(2)(ii) because Counsel's professional judgment was illogical; he did not investigate how many verdicts the jury had reached, although he had an opportunity to do so; and this prejudiced Mr. Prendes. In addition, since Mr. Prendes entered the plea without full knowledge of the jury's tally, i.e. that they had acquitted him on two serious counts and had taken no tally on a third serious count; and that Petitioner was going to have a lifetime registration requirement if he pled guilty to the indecent assault charge, the plea was not knowing, intelligent nor voluntary.

15

As noted above, trial Counsel was acting blind and in panic mode. It should have been clear that the jury's verdict only demonstrated that there were acquittals on two charges and no verdicts upon which guilt could be premised. Or, in the alternative, he should have done what any reasonable attorney would have done, perform some investigation and have the Court determine on how many counts the jury had reached a verdict.

Thus, Counsel's advice was not based on reasoned analysis, and Counsel then improperly proceeded to advise and then pressure Mr. Prendes into pleading guilty.

4. The Court erred in not addressing the newly discovered evidence claim involving Charles Patton. Patton was an agent of the District Attorney's Office and claimed that Petitioner made admissions to him during a pre-polygraph interview. Subsequent to trial, Petitioner learned that Patton has lied for the prosecution in other cases, which has led to dismissal of charges under circumstances eerily similar to those in this case. *See*, Opinion of the Honorable Stephen G. Baratta, President Judge, which was attached to the PCRA Petition and incorporated herein by reference. The remainder of the recitals set forth in the PCRA Petition at paragraph 32 (H) of the PCRA Petition are hereby incorporated by reference as if set forth in their entirety.
Additionally, this evidence significantly aided the prosecution while denigrating Prendes' credibility as it reflected S.P. would sleep over his house, and he would assist in showering, bathing, and other similar ministrations, showing a potential predisposition to commit this crime.

This new information could have been used to argue that Mr. Patton's testimony was unreliable, and this information would have demonstrated that Mr. Prendes testified truthfully and was not predisposed to committing these acts as was inferred in Patton's testimony. Hence, it is reasonably likely that this evidence would compel a new trial.

Concise Statement of Matters Complained of on Appeal, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Aug. 8, 2016) ("Concise Statement").

16

## DISCUSSION

### I.  Standard of Review

"The standard of review applicable to appeals from the denial of PCRA relief requires [the Pennsylvania Superior Court] to ascertain whether the PCRA court's rulings are supported by the record and free of any legal error." *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009) (citations omitted). The Superior Court "grants great deference to the findings of the PCRA court if the record contains any support for those findings.  Further, the PCRA court's credibility determinations are binding on [the Superior Court] where there is record support for those determinations." *Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010) (citations omitted). However, the Superior Court reviews the PCRA court's legal conclusions *de novo*.  *See Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014) (citation omitted).

### II.  Post-Conviction Relief Act

In order to be eligible for post-conviction collateral relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the following enumerated errors or defects:

> (i)  a violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have

17

taken place.

    (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

    (iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

    (iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

    (v) Deleted by statute.

    (vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

    (vii) The imposition of a sentence greater than the lawful maximum.

    (viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S.A. § 9543(a)(2).

In addition, the petitioner must establish that these allegations of error have not been previously litigated or waived. *See* 42 Pa.C.S.A. § 9543(a)(3). "[A]n issue has been previously litigated if . . . the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.A. § 9544(a). "[A]n issue is waived if the petitioner could have raised it but failed to do so before

18

trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b). Furthermore, the petitioner must demonstrate "[t]hat the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa.C.S.A. § 9543(a)(4).

When a defendant enters a plea of guilty to the charges against him, he waives all grounds of appeal "other than challenges to the voluntariness of the plea and the jurisdiction of the court." *See Commonwealth v. Boyd*, 835 A.2d 812, 815 (Pa. Super. 2003) (citation omitted). As these issues are waived for the purposes of direct appeal, they are also waived for the purposes of post-conviction relief. Therefore, after a guilty plea, "the only cognizable issues in a post conviction proceeding are the validity of the plea of guilty and the legality of the sentence." *Commonwealth v. Rounsley*, 717 A.2d 537, 538 (Pa. Super. 1998).[10]

A. Validity of Guilty Plea

A guilty plea is valid if it is "knowingly, voluntarily, and intelligently entered." *Commonwealth v. Pollard*, 832 A.2d 517, 522 (Pa. Super. 2003). The law presumes that a defendant who enters a guilty plea is aware of what he is doing. *Commonwealth v. Stork*, 737 A.2d 789, 790 (Pa. Super. 1999).

---

[10] Prendes's petition did not challenge the jurisdiction of the court, thus this opinion is confined to a discussion of the voluntariness of the guilty plea.

19

Thus, the burden of proving involuntariness is on the defendant. *See id.* A defendant's guilty plea is not unknowing, involuntary, or unintelligent simply because the defendant is not "totally pleased with the outcome of his decision to plead guilty." *Pollard*, 832 A.2d at 524.

Guilty pleas must be taken in open court and may only be accepted if the judge determines, after an inquiry on the record, "that the plea is voluntarily and understandingly tendered." Pa.R.Crim.P. 590(A). At a minimum, the court must inquire as to the following:

> (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?
>
> (2) Is there a factual basis for the plea?
>
> (3) Does the defendant understand that he or she has the right to trial by jury?
>
> (4) Does the defendant understand that he or she is presumed innocent until found guilty?
>
> (5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?
>
> (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Id.* cmt. "Where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established." *Commonwealth v. Lewis*, 634 A.2d 633, 635 (Pa.

20

Super. 1993). "A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled." *Stork*, 737 A.2d at 790-91.

Here, Prendes acknowledged, both through an oral colloquy and a written statement, that he understood the nature of the charges to which he was pleading guilty. *See* N.T. Sept. 18 at 25-26; Guilty Plea Statement (Colloquy) ¶ 14. Prendes denied being forced or threatened to plead guilty. *See* N.T. Sept. 18 at 30; Guilty Plea Statement (Colloquy) ¶ 37-38, 40. Prendes also acknowledged the factual basis for the plea and admitted that he committed the crimes as described by the Commonwealth. *See* N.T. Sept. 18 at 37-38. Additionally, Prendes admitted that he understood that he had a right to trial by jury, and that he would be presumed innocent until proven guilty. *See id.* at 28-29; Guilty Plea Statement (Colloquy) ¶ 22. Prendes acknowledged that he was aware of the permissible ranges of sentences for the relevant offenses, and, contrary to his assertions, that a lifetime registration might result from his plea deal. *See* N.T. Sept. 18 at 32-33, 38-40; Guilty Plea Statement (Colloquy) ¶ 27. Finally, Prendes acknowledged that he understood that the court was not bound by the terms of any plea agreement unless the court accepted the agreement. *See* Guilty Plea Statement (Colloquy) ¶ 28. Both his oral and written plea colloquies demonstrate that Prendes's guilty plea was knowing, voluntary, and intelligent. *See Lewis*, 634 A.2d at 635.

21

Despite the knowing, voluntary, and intelligent nature of Prendes's guilty plea, Prendes sought post-conviction relief under 42 Pa.C.S.A. § 9543(a)(2)(ii), alleging ineffective assistance of counsel; 42 Pa.C.S.A. § 9543(a)(2)(iii), alleging unlawful inducement of a guilty plea; and 42 Pa.C.S.A. § 9543(a)(2)(vi), based upon after-discovered evidence. *See generally* Prendes's Petition. The court denied relief. *See generally* PCRA Denial. Each ground is addressed in turn.

### i. Ineffective Assistance of Counsel

Prendes alleges that the court erred in denying post-conviction relief based on his claim that trial counsel was ineffective. *See* Concise Statement ¶ 1, 3. Prendes contends that trial counsel's ineffectiveness during trial contributed to an atmosphere under which he pleaded guilty. *See id.* ¶ 1. In the alternative, Prendes asserts that trial counsel provided ineffective assistance in advising him to plead guilty based on an "illogical" assessment of the case. *See id.* ¶ 3. We disagree.

The Pennsylvania Supreme Court has established a three-factor inquiry to evaluate claims of ineffective assistance of counsel. *See Commonwealth v. Barndt*, 74 A.3d 185, 192 (Pa. Super. 2013). In order to obtain relief based on such claims, a petitioner must demonstrate that "(1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice." *Miller*, 987 A.2d at 648. "Trial counsel is presumed to

22

be effective, and Appellant bears the burden of proving each of the three factors by a preponderance of the evidence." *Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014).

A defendant's constitutionally protected right to effective assistance of counsel extends to counsel's role in advising his client regarding the consequences of a guilty plea. *See Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012). However, "allegations of ineffective assistance of counsel in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea." *Boyd*, 835 A.2d at 815 (citations omitted). In such cases, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Barndt*, 74 A.3d at 192. Under this standard, an appellant must establish "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (citations omitted). A reasonable probability exists where there is "a probability sufficient to undermine confidence in the outcome." *Id.*

Through his petition, Prendes alleged that trial counsel was ineffective because he failed 1) to present the testimony of Dr. Robert M. Gordon at trial; 2) to call character witnesses at trial; 3) to present all of the necessary evidence in a 404(b) motion prior to trial; 4) to present rebuttal testimony from Patricia Hart at trial; 5) to present the testimony of Susan Fabrizio at

23

trial; 6) to object to Gregory Prendes's testimony about an incident of abuse concerning Prendes; 7) to request information from Prendes regarding witnesses who could have negated Amy Prendes's claim that she saw Prendes in the bedroom with the victim; and 8) to obtain the rough notes of Charles Patton before having Prendes testify. *See* Prendes's Petition ¶¶ 32(A)-(G), (I); Prendes's Amended Petition ¶ 3(a); Concise Statement ¶ 1. All of these alleged errors relate to trial counsel's performance during Prendes's trial. They do not address the validity of Prendes's guilty plea. *See Rounsely*, 717 A.2d at 538. Prendes waived these claims by entering into a negotiated guilty plea. *See id.*

Separately, Prendes alleged that trial counsel was ineffective because his "professional judgment was illogical," in that he did not fully investigate and inform Prendes of the jury's tally prior to advising Prendes regarding the guilty plea. Concise Statement ¶ 3. Prendes also alleged that trial counsel was ineffective in failing to inform him of the Megan's Law consequences of his guilty plea. *See id.* Prendes failed to establish that either of these alleged errors amounts to ineffective assistance of counsel.

First, as Prendes himself admitted, trial counsel did share the jury tally, at least in part, with Prendes during the course of plea negotiations. *See* N.T. Jun. 13 at 64. Trial counsel communicated to Prendes that the jury tally made him less confident in the likelihood of an acquittal. *See id.* at 30-31, 63. He also discussed the outcome of various scenarios with Prendes,

24

both before and during the trial, including during jury deliberations. *See id.* at 31, 60-61. Trial counsel's evaluation of the jury tally and his advice regarding the guilty plea were based on twenty years of experience as a defense attorney representing thousands of criminal defendants. *See id.* at 37-38. Prendes did not establish that trial counsel lacked a reasonable basis for his advice, nor did he demonstrate that he was prejudiced by such advice.

Second, in contrast to Prendes's assertions, trial counsel repeatedly informed Prendes of the potential Megan's Law consequences of his guilty plea. Trial counsel prepared a memorandum for Prendes, prior to trial, describing the Megan's Law consequences of a proposed guilty plea, including the possibility of lifetime registration. *See id.* at 80. Prendes ultimately accepted a nearly identical plea during trial. *See id.* Moreover, Prendes acknowledged the possibility of lifetime registration in both his written and oral plea colloquies. *See* N.T. Sept. 18 at 38-40; Guilty Plea Statement (Colloquy) ¶ 27. In fact, trial counsel made a point to supplement Prendes's oral plea colloquy to address the December 2012 amendments to the Megan's Law statute, which extended the required registration periods.[11] Finally, even if Prendes had never received these

_____

[11] "Your Honor, may I supplement the colloquy? These are amendments that are going to be enacted in December. There may be issues regarding that, which are applicable to any offender, therefore, I believe the 10 year registration for these
**FOOTNOTE CONTINUED ON NEXT PAGE**

25

numerous warnings, the Pennsylvania Supreme Court has deemed sex offender registration a "collateral and not direct consequence[] of a plea or other conviction." *Commonwealth v. Leidig*, 956 A.2d 399, 406 (Pa. 2008). As such, "a defendant's lack of knowledge of these collateral consequences . . . fails to undermine the validity of the plea." *Id.*

For these reasons, we respectfully suggest that this claim of error is without merit.

### ii. Unlawful Inducement of a Guilty Plea

Prendes alleges that the court erred in denying post-conviction relief based on his claim that trial counsel impermissibly coerced him into entering a plea of guilty. *See* Concise Statement ¶ 2. He argues that trial counsel's evaluation and advice were "based upon . . . fear, [and] without rational basis." *See id.* We disagree.

An unlawfully induced guilty plea raises a cognizable claim under the Post-Conviction Relief Act only where "the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent." 42 Pa.C.S.A. § 9543(a)(2)(iii). The petitioner has the burden of

---

**FOOTNOTE CONTINUED FROM PREVIOUS PAGE**
offenses will be a 15 year registration, and, in some cases, some of the other offenders are 25 year registrations. I want to get that on the record so the defendant is warned that in the event the amendments take place and are affected toward similar situations, the defendant is aware there could be a lengthy registration period and of course, actually a lifetime should he be deemed to be a sexually violent predator after an evaluation court hearing." *See* N.T. Sept. 18 at 39-40.

26

proving that the guilty plea was involuntary. *See Commonwealth v. Robinson*, 385 A.2d 448, 451 (Pa. Super. 1978).

Prendes contends that trial counsel unlawfully induced his plea by "continually threaten[ing] that [he] could receive a thirty-year sentence and be incarcerated for essentially the rest of his life if he did not plead guilty." Concise Statement ¶ 2. During the PCRA evidentiary hearing, trial counsel indicated that he discussed "every scenario [he] could possibly go through" with his client. N.T. Jul 13 at 33. At the hearing, all witnesses recalled that trial counsel had mentioned a maximum possible sentence of thirty years at multiple points during the plea negotiation. *See* N.T. Jun. 13 at 33, 58, 104. Prendes indicated that this information "scared" him because, at the time of the plea, he was sixty-two years old and he considered a lengthy prison sentence tantamount to a death sentence. *Id.* at 68. Trial counsel's advice, however, was not only accurate, but also required under Pennsylvania law. *See* Pa.R.Crim.P. 590(A)(5). Failing to provide information on the permissible sentencing ranges would have rendered trial counsel's performance ineffective assistance of counsel. *See generally Commonwealth v. Persinger*, 615 A.2d 1305 (Pa. 1992). While a potential thirty year sentence might have "scared" Prendes, it does not rise to the level of an unlawful inducement. *See* N.T. Jun. 13 at 68.

Prendes also asserted that trial counsel's ineffectiveness unlawfully induced his guilty plea because he unreasonably advised Prendes to enter a

27

plea during jury deliberations, rather than await the jury's verdict. *See* Concise Statement ¶¶ 2-3. The Pennsylvania Supreme Court, however, has found that "[a] chosen strategy by [trial counsel] will not be found to have been unreasonable unless it is proven that the path not chosen offered a potential for success substantially greater than the course actually pursued." *Miller*, 987 A.2d at 648-49 (citations omitted). Prendes failed to establish that "the path not chosen" by trial counsel, namely waiting for the jury's verdict, "offered a potential for success substantially greater than" accepting the guilty plea. *Id.* He merely speculates that the jury would have failed to reach a verdict or that the jury would have acquitted him of the more serious charges. *See* N.T. Jun. 13 at 131-32. As such, Prendes has not established that trial counsel was ineffective, and thus his claim of unlawful inducement must also fail. *See Miller*, 987 A.2d at 648-49 (stating, in part, ineffective assistance of counsel requires "counsel's performance lacked a reasonable basis").

Separately, Prendes's allegation of coercion directly contradicts both his plea colloquy and even testimony he provided during the PCRA evidentiary hearing. During his plea colloquy, Prendes denied being forced or threatened to enter a guilty plea. *See* N.T. Sept. 18 at 30; Guilty Plea Statement (Colloquy) ¶ 37, 40. He stated that the decision to enter a plea of guilty was of his own volition. *See* N.T. Sept. 18 at 30-31; Guilty Plea Statement (Colloquy) at 2, ¶ 38. During the PCRA evidentiary hearing,

28

Prendes confirmed that he made the decision to plead guilty himself. *See* N.T. Jun. 13 at 74. "A defendant is bound by the statements he makes during his plea colloquy." *Stork*, 737 A.2d at 790-91. The record indicates that Prendes freely and voluntarily entered his guilty plea. *See generally* N.T. Sept. 18. He cannot now assert that he was impermissibly coerced, in contradiction of his earlier plea. *See Stork*, 737 A.2d at 790-91.

Finally, the court notes that Prendes's esteem for his trial counsel conveniently deteriorated for the purposes of his appellate proceedings. During his plea colloquy, Prendes was very satisfied with trial counsel's services. *See* N.T. Sept. 18 at 27. Later, through his PCRA petition and testimony at the evidentiary hearing, trial counsel was described as "threaten[ing]", "flustered, anxious, nervous, [and] panicked." Concise Statement ¶ 2; N.T. Jul 13 at 58. Despite these subsequent allegations, Prendes has not established that counsel's accurate assessment of his potential prison sentence unlawfully induced his guilty plea, nor has Prendes demonstrated that trial counsel provided ineffective assistance. Therefore, we respectfully suggest that this claim of error is without merit.

### iii. After-Discovered Evidence

Prendes asserts that the court erred in denying his petition for post-conviction relief because newly discovered evidence allegedly brings into question the credibility of a prosecution witness. *See id.* ¶ 4. He argues

29

that "it is reasonably likely that this evidence would compel a new trial." *Id.*
We disagree.

In order to obtain relief based upon after-discovered evidence, a petitioner must establish "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence, (2) the evidence is not cumulative, (3) it is not being used solely to impeach credibility, and (4) it would likely compel a different verdict." *Commonwealth v. Washington*, 927 A.2d 586, 595-96 (Pa. 2007).

Through his petition, Prendes asserted that evidence discrediting a prosecution witness amounted to newly discovered evidence sufficient to warrant post-conviction relief. *See* Prendes's Petition ¶ 32(H). Specifically, his petition asserted that a polygraph analyst, who testified in Prendes's case, was unreliable because, in a wholly separate case after Prendes's guilty plea, evidence supplied by the polygraph analyst was suppressed. *See id.* ¶ 32(H), Ex. E-F. In that case, the polygraph analyst had failed to provide a defendant with his *Miranda* warning and the analyst's account of that interview was deemed unreliable and contradictory. *See id.* During Prendes's trial, the polygraph analyst testified as to remarks Prendes allegedly made during a pre-polygraph interview. *See id.* ¶ 32(H). Prendes denied making such remarks during his own testimony. *See id.*

At most, this evidence would serve only to impeach the credibility of the polygraph analyst. Given this singular purpose, Prendes did not

30

establish a claim to relief under 42 Pa.C.S.A. § 9543(a)(2)(vi). *See*

*Washington*, 927 A.2d at 596. Moreover, the issue of this witness's

credibility does not exculpate Prendes, as required by the statute's express

language. *See* 42 Pa.C.S.A. § 9543(a)(2)(vi) (requiring after-discovered

evidence to be "exculpatory"). It merely presents evidence as to one

witness's veracity, which the jury could have chosen to accept or reject.

Prendes waived his right to present such evidence by accepting a negotiated

guilty plea. *See Boyd*, 835 A.2d at 815. Thus, we respectfully suggest that

this claim of error is without merit.

B. Right to Evidentiary Hearing

Prendes asserts that the court erred in limiting his evidentiary hearing

to claims that his guilty plea was unlawfully coerced. *See* Concise Statement

¶ 1, 4. He argues that the court should have permitted him to litigate all

issues of trial counsel's ineffectiveness and to address his claim of newly

discovered evidence. *See id.* We disagree.

"The right to an evidentiary hearing on a post-conviction petition is not

absolute." *Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa. Super.

2001). Pennsylvania Rule of Criminal Procedure 908 provides that a "judge

shall order a hearing . . . when the petition for post-conviction relief . . .

raises material issues of fact." Pa.R.Crim.P. 908(A)(2). "It is within the

PCRA court's discretion to decline to hold a hearing if the petitioner's claim is

31

patently frivolous and has no support either in the record or other evidence." *Wah*, 42 A.3d at 338 (citations omitted).

Prendes requested an evidentiary hearing that would encompass all claims raised in his PCRA petition. *See* Reply Memorandum, *Commonwealth v. Prendes*, No. C-48-CR-1246-2012 (C.P. Northampton Co. Jun 7, 2016). The court did not permit Prendes to explore claims of trial counsel's ineffectiveness during his former trial. *See generally* N.T. Jun. 13. These claims did not address the validity of Prendes's guilty plea or the legality of his sentence, thus they were waived when Prendes entered a plea of guilty. *See Rounsely*, 717 A.2d at 538. Similarly, the court denied Prendes's request for a hearing on the after-discovered evidence matter because (1) impeachment evidence does not establish a basis for relief under 42 Pa.C.S.A. § 9543(a)(2)(vi) and (2) Prendes waived this claim by entering into a negotiated guilty plea. *See Washington*, 927 A.2d 595-96 (explaining standard for after-discovered evidence); *Boyd*, 835 A.2d at 815 (discussing waiver of rights subsequent to guilty plea). These claims were "patently frivolous" and were wholly unsupported by both the record and the law. *Wah*, 42 A.3d at 338 (citations omitted). Therefore, we respectfully suggest that this claim of error is without merit.

## CONCLUSION

For the reasons set forth above, we respectfully suggest that Prendes's appeal lacks merit and should be dismissed.

**BY THE COURT,**

MICHAEL J. KOURY, JR., J.